■ YOUNG, FENTON, KELSEY & BROWN, P.C., et al., Respondents-Appellants, v PAUL H. WEIN et al., Appellants-Respondents. [976 NYS2d 584]—

Spain, J. Cross appeals from an order of the Supreme Court (Krogmann, J.), entered October 19, 2012 in Warren County, upon a decision of the court which, among other things, allocated an award of counsel fees.

Defendants Paul H. Wein and Jason A. Frament were at-

torneys at Wein, Young, Fenton & Kelsey, P.C. (hereinafter WYFK) until leaving at the end of 2009 to establish their own firm, defendant Wein & Frament, PLLC (hereinafter the Wein firm). Wein and Frament handled personal injury litigation for WYFK, which accepted such cases on a contingent fee basis, and Wein and Frament took a number of pending personal injury case files with them upon their departure. WYFK was thereafter renamed plaintiff Young, Fenton, Kelsey & Brown, P.C. (hereinafter the Young firm). No agreement was in place to address the financial issues that would ensue from the departure of Wein and Frament from WYFK, including how to allocate counsel fees in cases where work had been performed by both WYFK and the Wein firm. Plaintiffs, the current incarnation of WYFK and its principals, thereafter commenced this action and made various claims related to the departure of Wein and Frament, including that the Young firm had a valid attorney's lien against counsel fees recovered in the personal injury cases.[1] Two of the cases at issue were *Urtz v Grow* (Sup Ct, Warren County, index No. 53009) and *Palmieri v Peterson* (Sup Ct, Onondaga County, index No. 2664/07), both of which were eventually settled for significant sums in 2011.

Plaintiffs moved pursuant to Judiciary Law § 475 for an order determining their lien to be valid and allocating counsel fees in various cases. A flurry of activity followed, including a hearing to determine the proper allocation of fees in *Urtz* and *Palmieri*. Supreme Court ultimately awarded 70% of the net $136,364.40 fee in *Urtz* to the Wein firm, with the remainder payable to the Young firm.[2] Supreme Court further held that the Young firm was entitled to $20,000 of the $62,000.85 fee in *Palmieri*, and awarded the rest to the Wein firm. Defendants appeal and plaintiffs cross-appeal from the order.

Inasmuch as the fee dispute here is one between attorneys that does not involve a client, the Young firm had the choice of "receiv[ing] immediate compensation on a quantum meruit basis [at the time Wein and Frament departed] or . . . receiv[ing] a share of a contingent fee based on a proportionate share of the work [the firm] performed; if no such election is made at the time of [the departure], the [firm] is presumed to have elected a contingent fee" (*Wiggins v Kopko*, 105 AD3d 1132,

---

**1.** This action was subsequently consolidated with one brought by Wein—who had been a partner at WYFK—seeking damages for breach of contract and breach of fiduciary duty stemming from his departure from the firm.

**2.** Supreme Court had previously directed that one third of the gross contingency fee in *Urtz* be paid to the attorney who had originally referred the matter to Wein.

1135 [2013]; *see Matter of Cohen v Grainger, Tesoriero & Bell*, 81 NY2d 655, 658 [1993]; *Lai Ling Cheng v Modansky Leasing Co.*, 73 NY2d 454, 458 [1989]). Immediate compensation was not sought and, accordingly, Supreme Court was obliged to determine the proportionate share of the work performed by "focus[ing] on the time and labor spent by each [firm], the actual work performed, the difficulty of the questions involved, the skill required to handle the matter, the attorney[s'] skills and experience, and the effectiveness of counsel in bringing the matter to resolution" (*Buchta v Union-Endicott Cent. School Dist.*, 296 AD2d 688, 689-690 [2002] [internal quotation marks and citations omitted]; *see Lai Ling Cheng v Modansky Leasing Co.*, 73 NY2d at 458). The ultimate fee apportionment is a discretionary matter for Supreme Court, and will not be disturbed absent an improvident exercise thereof (*see Russo v City of New York*, 48 AD3d 540, 541 [2008]; *Rouen v Chrysler Credit Corp.*, 169 AD2d 656, 656 [1991]).

The plaintiff in *Urtz* was seriously injured in a December 2008 accident when an automobile crossed into oncoming traffic and struck the vehicle in which she was a passenger. An attorney referred her to Wein and WYFK, which was retained in January 2009 upon a contingent fee basis. Wein and Frament thoroughly investigated the facts of the case prior to their departure from WYFK and, given the strong indications that the driver of the other vehicle was at fault, retained experts to quantify the economic losses sustained by the plaintiff. After the settlement discussions were unsuccessful, the *Urtz* action was commenced in October 2009. The remaining work performed at WYFK largely involved responding to discovery demands and drafting a bill of particulars. Wein and Frament only documented 28.3 hours of work on the case while at WYFK; however, both had ceased to record their billable hours in their final months. They proceeded to spend 197.85 hours on the case after their departure, time that was devoted to engaging in discovery and motion practice that forced the defendants in *Urtz* to concede on the issue of liability and led to a settlement. Inasmuch as Wein and Frament did the bulk of the work on the case, set the stage for its settlement after their departure and did significant foundational work while still at WYFK, Supreme Court did not abuse its discretion in awarding 30% of the net fee to the Young firm.

The *Palmieri* case involved an automobile driver who was injured when he collided with a cow standing in the road. WYFK was retained by Daniel F. Palmieri and his wife upon a contingent fee basis in September 2006, and Wein and Frament

performed all of the work on the case.[3] During that time, they conducted almost all discovery, commenced the action, and successfully moved for partial summary judgment on liability. The time records of WYFK recorded 124.35 billable hours on the case although, again, both Wein and Frament stopped documenting their work in the months leading up to their departure.

While a significant amount of legal work was performed at WYFK, the record also reflects that the ultimate recovery in the case resulted from work performed after Wein and Frament started their own practice. As the medical evidence of Palmieri's injuries proved problematic, Wein and Frament acted to secure additional medical testimony. They further successfully moved to preclude the trial testimony of a physician who had conducted an independent medical examination of Palmieri, setting the stage for serious settlement negotiations. Wein and another attorney were still required to prepare for trial, unable to settle the case until after jury selection had begun, resulting in the Wein firm incurring 229 billable hours on the matter. Given this evidence, we cannot say that Supreme Court abused its discretion in recognizing "the contributions of the respective [firms] toward achieving the outcome" by awarding approximately 70% of the contingency fee to the Wein firm (*Martin v Feltingoff*, 7 AD3d 467, 467 [2004], *lv denied* 3 NY3d 608 [2004]; *see Diakrousis v Maganga*, 61 AD3d 469, 469 [2009]; *Buchta v Union-Endicott Cent. School Dist.*, 296 AD2d at 690).

Plaintiffs accurately observe that Supreme Court should have included WYFK's disbursements—which the court established but incorrectly assumed had already been paid—in its award (*see Gotham Music Serv. v Denton & Haskins Music Publ. Co.*, 237 App Div 78, 79 [1932]). The remaining contentions of the parties, to the extent they are properly before us, have been examined and found to lack merit.

Peters, P.J., Stein and McCarthy, JJ., concur. Ordered that the order is modified, on the law and the facts, without costs, by increasing the amount of the award of counsel fees due plaintiff Young, Fenton, Kelsey & Brown, P.C. to include disbursements of $3,195.85 in *Urtz v Grow* and $3,513.20 in *Palmieri v Peterson*, and, as so modified, affirmed.

---

**3.** Plaintiffs assert that the retention of WYFK by the Palmieris was the result of goodwill it had acquired over years of practice but, in that regard, the record reflects that WYFK was only retained because Wein was pressured by an old friend to take the case.