■ TIFFANY BUCHTA, Plaintiff, v UNION-ENDICOTT CENTRAL SCHOOL DISTRICT, Defendant. FINKELSTEIN & PARTNERS, L.L.P., Respondent; DELDUCHETTO & POTTER et al., Appellants. [745 NYS2d 143] —Peters, J. Appeal from an order of the Supreme Court (Relihan, Jr., J.), entered October 18, 2001 in Broome County, which, inter alia, granted a motion by Finkelstein & Partners, L.L.P. for an award of counsel fees.

On June 11, 1993, plaintiff, then age 13, lost the sight in her left eye as a result of being struck in the face with a water balloon during a school-sponsored event on school property. Plaintiff's parents, representing her interests as an infant, initially retained the law firm of Hickey, Sheehan & Gates, P.C. (hereinafter Hickey) with attorney Paul Price as their primary contact. Although Price continued to represent plaintiff after he left Hickey to form his own firm, Price and Hickey agreed to be treated as one entity for the purpose of this action (hereinafter referred to as the Hickey/Price firm). During the time of Hickey/Price's representation, the firm performed, inter alia, an initial investigation of the accident, which included interviews with several nonparty witnesses, site photographs and the collaboration of medical records and opinions from plaintiff's treating physicians. It further complied with all requisite notice requirements and chose not to commence a derivative claim. Although there was a distinct possibility that plaintiff's left eye may have to be enucleated and that she was "at a greater risk than normal for a traumatic cataract in her right eye," the Hickey/Price firm procured a structured settlement proposal with a present value of $350,000, which was rejected by plaintiff as inadequate.

In October 1996, plaintiff discharged the Hickey/Price firm and sought representation from attorney Scott Gottlieb, who brought in the law firm of DelDuchetto & Potter (hereinafter collectively referred to as DelDuchetto). During the course of its representation, the action was formally commenced, discovery was completed and a note of issue was filed. This entailed preparing and filing a summons and complaint, completing bills of particulars, making numerous discovery demands, conducting multiple depositions and retaining the services of an economic expert. By such time, plaintiff had a complete loss of vision in her left eye yet enucleation was not medically necessary. DelDuchetto recommended proceeding

with a proposed arbitration having high/low limits of $750,000 and $150,000; plaintiff declined.

In June 1998, plaintiff discharged DelDuchetto and substituted Finkelstein & Partners, L.L.P. (hereinafter Finkelstein) as attorneys of record. A new adjuster was thereafter assigned by defendant's liability insurance carrier. Contending that following the depositions in February 1997, DelDuchetto did little legal work until May 1998 when the note of issue was filed, Finkelstein requested that the trial court permit further discovery or strike the note of issue. Within three days of that request, the court was advised that defendant was to concede liability. By stipulation dated January 14, 1999, the ad damnum clause was increased from $3,000,000 to $13,000,000.

Finkelstein prepared this case for trial over the next 2½ years. In the months prior to the scheduled trial, plaintiff underwent an enucleation of her injured eye and was using a prosthesis. A traumatic cataract had also developed in the other eye. On February 5, 2001, the eve of trial, Finkelstein obtained a settlement offer in the amount of $2,000,000, which was accepted. Defense counsel Michael Wright opined that the reasons underlying the increased settlement offer were plaintiff's deteriorating condition and the earlier reassignment of this matter to a different adjuster.

Finkelstein moved pursuant to Judiciary Law § 475 for an order fixing counsel fees. Supreme Court determined, after oral argument on the motion, that 75% of the $656,768.04 fee would be awarded to Finkelstein and 12.5% each would be awarded to DelDuchetto and the Hickey/Price firm. Only DelDuchetto and the Hickey/Price firm appeal.

We first dismiss Finkelstein's initial contention that Supreme Court erred in failing to find that the Hickey/Price firm was discharged for cause and thus not entitled to any portion of the fee. Having failed to file a notice of appeal challenging that portion of the underlying order, we "cannot grant affirmative relief to a nonappealing party * * * [when we find] it * * * [un]necessary to do so in order to accord full relief to a party who has appealed" (*Hecht v City of New York*, 60 NY2d 57, 60). Next, inasmuch as the outgoing law firms do not seek compensation on the basis of a presently fixed dollar value amount grounded on quantum meruit, this fee dispute must be resolved on the basis of each law firm's proportionate share of the work performed on the whole case (*see, Lai Ling Cheng v Modansky Leasing Co.*, 73 NY2d 454, 458). In assessing each firm's proportionate contribution, we focus on the time and labor spent by each, the actual work performed (*see, id.* at 458), the

"difficulty of the questions involved, the skill required to handle the matter, the attorney's skills and experience, [and] the effectiveness of counsel in bringing the matter to resolution" (*Warren v Meyers*, 187 Misc 2d 668, 675).*

Despite a failure of the Hickey/Price firm to proffer time records in support of the services it rendered, its affidavits provide adequate detail (*see, Costello v Kiaer*, 278 AD2d 50, 50). In the most favorable view, we find that its three years of representation consisted primarily of a preliminary investigation of the accident, its initial effect upon the plaintiff and a filing of a notice of claim.

DelDuchetto, however, commenced the action, conducted all discovery and filed a note of issue. The record also reflects that, during its approximate two years of representation, defendant was prepared to concede liability. Although neither law firm obtained a settlement offer approaching that obtained by Finkelstein, the record demonstrates that after Finkelstein entered the case, the risk of deterioration in plaintiff's condition that existed prior thereto became a reality. Clearly, this conversion of risk into reality translated into a significant increase in the likelihood of a substantial jury verdict on the issue of damages. It is also clear, however, that Finkelstein recognized the increase in potential damages, vigorously pursued plaintiff's claim and achieved a substantial settlement. Based upon our review of the record, we are of the view that an award of 65% of the total counsel fee to Finkelstein more accurately reflects its proportionate share of the work on the whole case, with an award of 35% to the outgoing attorneys (*see, Pearl v Metropolitan Transp. Auth.*, 156 AD2d 281), to be divided as follows: 10% to the Hickey/Price firm and 25% to DelDuchetto.

Cardona, P.J., Mercure, Spain and Carpinello, JJ., concur. Ordered that the order is modified, on the facts, without costs, by reducing the counsel fee awarded to Finkelstein & Partners, L.L.P. to 65% of the total award of counsel fees, reducing the counsel fee awarded to Hickey, Sheehan & Gates, P.C. to 10% of the total award of counsel fees and increasing the counsel fee awarded to DelDuchetto & Potter to 25% of the total award of counsel fees, and, as so modified, affirmed.

---

* Here, we are constrained by Supreme Court's failure to have analyzed any of these factors. Recognizing that we have the option of either remitting this matter (*see, Fernandez v New York City Health & Hosps. Corp.*, 238 AD2d 544, 545; *Smith v Boscov's Dept. Store*, 192 AD2d 949, 951) or finally resolving it, judicial economy, partnered with a full record, compels us to resolution.