Irene N. GREENBERG and Barry Greenberg, Plaintiffs,

v.

CROSS ISLAND INDUSTRIES, INC.; Kenneth L. Beere; and Suffolk Paving Corp., Defendants.

No. 05CV6026 (ADS)(MLO).

United States District Court, E.D. New York.

Oct. 16, 2007.

Alpert & Kaufman, LLP, New York City (Morton Alpert, of counsel), Gair, Gair, Conason, Steigman & MacKauf, New York City (Anthony H. Gair, of counsel), for the Plaintiff.

## MEMORANDUM OF DECISION AND ORDER

ARTHUR D. SPATT, District Judge.

What began as a routine settlement in a personal injury action has evolved into a contentious battle between plaintiffs' previous and present counsel over the proper apportionment of legal fees. Here, however, in a somewhat unusual circumstance, the clients, rather than present counsel, are to pay the fee of previous counsel separately and in addition to the fee of present counsel.

## I. BACKGROUND.

On August 20, 2004, Irene Greenberg was injured when a truck owned by Cross Island Industries, and transporting a load of asphalt for Suffolk Paving Corp., failed to stop for a traffic signal, careening into the vehicles stopped at the signal, one of which was occupied by Mrs. Greenberg, causing her to sustain serious personal injuries. On December 15, 2005, Mrs. Greenberg and her husband, Barry Greenberg, retained Morton Alpert of Alpert & Kaufman, LLP ("the Alpert Firm") to represent them in an action for personal injuries and loss of services. In this regard, they entered into an agreement that provided for a contingency fee of twenty-five percent to the Alpert Firm if the case was resolved favorably. Twelve days later, on

December 27, 2005, the Alpert Firm filed a complaint in this Court against Cross Island Industries, Inc. and Kenneth L. Beere, the driver of the offending vehicle.

On February 23, 2006, Barry Greenberg, an attorney himself, discharged the Alpert Firm and retained Anthony H. Gair and the firm of Gair, Gair, Conason, Steigman & Mackauf ("the Gair Firm") as legal counsel. The retainer agreement between plaintiffs and the Gair firm also provided for a contingent fee of twenty-five percent of the total recovery.

On February 20, 2007, the Greenberg case was settled for $1,500,000 and, therefore, the legal fee to be received by the Gair firm pursuant to the retainer agreement is the sum of $369,614.33, plus disbursements of $21,542.70, totaling $391,157.03.

The Gair Firm now petitions this Court to set the legal fees of Alpert & Kaufman. It alleges that the Alpert Firm filed a defective complaint and treated the Greenbergs with disrespect. Accordingly, the Gair Firm asks this Court to find that the Alpert Firm was dismissed for cause and is not entitled to any legal fee. On the other hand, the Alpert Firm accuses the Gair Firm of attempting to mislead this Court by submitting as an exhibit to its motion an inaccurate version of the complaint filed by the Alpert Firm. In his affirmation, Alpert requests that this Court order monetary sanctions against the Gair Firm due to its alleged transgressions.

## II. DISCUSSION.

■ New York law controls the question of attorney's fees in this case. A federal court sitting in diversity must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Manuf. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 582 (2d Cir.2006). New York choice of law rules require a court to apply the law of the state with the most substantial interest in the issue to be resolved. *Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff*, 638 F.Supp. 714, 719 (S.D.N.Y.1986); *Indosuez Int'l. Finance B.V. v. Nat'l Reserve Bank*, 98 N.Y.2d 238, 245, 774 N.E.2d 696, 700, 746 N.Y.S.2d 631, 635 (2002). Here, two New York law firms represented the Greenbergs; their work was performed in New York by attorneys duly admitted to practice in New York; and for a cause of action arising in New York and controlled by the laws of that state. The only other interested states are Pennsylvania, the Greenbergs' home state at the time the action was filed, and Florida, the Greenbergs' current domicile. Thus, the Court finds that New York has the paramount interest with regard to the apportionment of attorney's fees in this case.

### A. Was the Alpert Firm Dismissed for Cause?

The Gair Firm asserts that Alpert & Kaufman was dismissed by the Greenbergs for cause and is not entitled to any legal fee. *See Garcia v. Teitler*, 443 F.3d 202, 212 (2d Cir.2006); *Friedman v. Park Cake, Inc.*, 34 A.D.3d 286, 287, 825 N.Y.S.2d 11, 12 (1st Dep't 2006) (stating that where an attorney is discharged for cause, she is entitled to no compensation). To support this argument, the Gair Firm alleges that the initiating complaint, filed by the Alpert Firm was "defective and dismissible" because (1) it failed to claim that Irene Greenberg suffered a serious injury or economic loss greater than basic economic loss, as required by New York Insurance Law §§ 5102(a) and (d), (2) it failed to make a claim for exemplary damages, and (3) it failed to name Suffolk Paving Co. as a necessary party to the action. The Court finds that the complaint

filed by Alpert & Kaufman did make the appropriate claims under New York Insurance Law §§ 5102(a) and (d). (Complaint at ¶ 15 (Dec. 27, 2005)). Thus, the Gair Firm's claim of a defective complaint on this ground is without merit.

■ Also, the complaint was not defective and dismissible simply because it did not seek exemplary damages. The complaint made a demand for "sums of money that will compensate [the plaintiffs] for the damages they have sustained; together with the costs and disbursements of this action." (Complaint at ¶ Final). A demand for exemplary or punitive damages is not usually included in motor vehicle personal injury actions, and such damages are rarely awarded. *See Parker v. Crown Equip. Corp.,* 39 A.D.3d 347, 348, 835 N.Y.S.2d 46, 47 (1st Dep't 2007) (dismissing plaintiff's punitive damage claim where there was no evidence of moral turpitude or wanton dishonesty in failure to properly maintain, repair, and inspect injuring forklift); *Boykin v. Mora,* 274 A.D.2d 441, 442, 711 N.Y.S.2d 904 (2d Dep't 2000) ("Punitive damages are available ... only where the actions of the alleged tortfeasor constitute either gross recklessness or intentional, wanton, or malicious conduct ... or were activated by evil or reprehensible motives.").

Further, if necessary, the Alpert Firm could have sought leave to amend the complaint to add a demand for punitive damages. *See* FED.R.CIV.P. 15(a)(2) (dictating that courts freely grant leave to amend pleadings "when justice so requires."); *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith,* 756 F.2d 230, 236 (2d Cir.1985) ("[I]n the preliminary stages of the lawsuit, the trial court should permit discovery and freely grant leave to amend the complaint under Rule 15."). In addition, the Federal Rules permit the award of exemplary damages where no separate claim is found in the complaint as long as the complaint contains facts in support of such an award and no unfair prejudice results to the opposing party. *See Griffith Labs. v. Pomper,* 607 F.Supp. 999, 1001 (S.D.N.Y.1985); *see also* FED.R.CIV.P. 54(c) ("[F]inal judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."). Therefore, the lack of a demand for punitive damages did not render the complaint defective.

■ In addition, the original complaint was not defective for non-joinder of a necessary party. The Gair Firm alleges that because the complaint failed to name Suffolk Paving Corp., an affiliate of the named defendant, who was responsible for the maintenance, inspection, examination, evaluation, service, and repair of the vehicle that caused the injuring event, it was defective. A necessary party is a person who should be joined in the action if "(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) ... impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." FED.R.CIV.P. 19(a).

However, only Cross Island Industries was listed on the police report and the Alpert Firm avers that in its initial investigation it did not unearth Suffolk Paving Corp. as a necessary party at the inception of the action. It is reasonable to believe that the Alpert Firm did not know Suffolk Paving Corp. to be a necessary party to the action at inception and could have remedied that omission by adding the party later in the law suit.

In any event, federal courts are reluctant to dismiss an action on grounds of non-joinder and, instead, will order the necessary party joined if that person is subject to service of process and joinder will not deprive the court of jurisdiction. *See* FED.R.CIV.P. 19(a) ("If the person has not been so joined, the court shall order that the person be made a party."); *World Omni Fin. Corp. v. Ace Capital Re, Inc.*, 2002 WL 31016669, at *2 (S.D.N.Y. Sept.10, 2002). Here, Suffolk Paving Corp., if necessary to the action, is a New York corporation with its principal place of business in Suffolk County, New York, and was subject to the jurisdiction of this Court without affecting diversity jurisdiction.

Furthermore, courts regularly grant leave to amend pleadings to add necessary parties. *See, e.g., World Omni*, 2002 WL 31016669, at *3; *Deshaw v. Lord & Taylor*, 1991 WL 107271, at *6 (S.D.N.Y. June 13, 1991). Therefore, because this Court could have ordered or otherwise allowed Suffolk Paving Corp. to be joined as a party defendant, the initial complaint was not defective and dismissible for failure to join a necessary party.

■ Evidence of a general dissatisfaction with an attorney's performance or a difference of opinion between attorney and client does not establish that the attorney was discharged for cause absent some evidence that the attorney failed to properly represent the client's interest. *Garcia*, 443 F.3d at 212; *Costello v. Kiaer*, 278 A.D.2d 50, 50, 717 N.Y.S.2d 560, 561 (1st Dep't 2000). Indeed, "[a]ttorney-client relationships frequently end because of personality conflicts, misunderstandings, or differences of opinion having nothing to do with any impropriety by either the client or the lawyer." *Klein v. Eubank*, 87 N.Y.2d 459, 663 N.E.2d 599, 640 N.Y.S.2d 443, (1996); *see also D'Jamoos v. Griffith*,

2006 WL 2086033, at *5 (E.D.N.Y. July 25, 2006).

■ Something more than a personality conflict or difference of opinion is required to establish discharge for cause and "[c]ourts typically find a discharge for cause where there has been a significant breach of legal duty." *D'Jamoos*, 2006 WL 2086033, at *5 (quoting *Allstate Ins. Co. v. Nandi*, 258 F.Supp.2d 309, 312 (S.D.N.Y.2003)). For example, in an extreme case, the court held that plaintiff's counsel was discharged for cause where it kept hidden from its client the fact that it had allowed the statute of limitations to expire. *In re Spatola*, 196 Misc.2d 666, 668, 763 N.Y.S.2d 463, 465 (Sur. Ct. Richmond Co.2003) ("When an attorney deliberately fails to disclose to a client critical information, it weakens [the fundamental] trust and confidence and erodes the relationship to the point that the client . . . has cause to discharge the attorney."). Here, there is no evidence that the conduct of the Alpert Firm breached the trust and confidence so crucial to the attorney-client relationship.

■ Instead, it is more likely, that the Alpert Firm was discharged as a result of a difference of opinion on how the case ought to be conducted. Mr. Greenberg is an experienced attorney, who undoubtedly had opinions about the manner in which the case should proceed. The likelihood that the Alpert Firm was dismissed based on some personality conflict or difference of opinion is supported by Mrs. Greenberg's statement that "[b]oth my husband and myself spent countless hours on the telephone with Mr. Gair discussing the case and exchanged e-mails on a regular basis." (Affidavit of Irene Greenberg at ¶ 5). This statement apparently illustrates the type of attention and service the Greenbergs expected from their attorneys. While the Gair Firm, a well regarded per-

sonal injury litigation firm, should be commended for its courteous and able service to the Greenbergs, the fact that the Alpert Firm may not have dedicated the same amount of time to the lawsuit is insufficient to establish that it was not representing its clients' interest or that it breached their trust and confidence.

The Court notes that in *Vallejo v. Builders for Family Youth*, 2007 WL 10386 (Sup.Ct. Kings Co. Jan. 2, 2007), the court found that because the letters to previous counsel regarding his discharge never mentioned cause and referred to the matter of his compensation, counsel was not discharged for cause. *Vallejo*, 2007 WL 10386, at *5; *see also Realuyo v. Diaz*, 2006 WL 695683, at *7 (S.D.N.Y. March 17, 2006) (finding no evidence of discharge for cause because, among other things, the client's termination letter to attorney failed to specify the reason for termination and requested an accounting of the lawyer's fee).

Similarly, here, the letter from Mr. Greenberg to the Alpert Firm regarding its discharge makes no reference to cause. Further, the letter from the Gair Firm to the Alpert Firm requesting transfer of the case file mentions Alpert's legal fees and states that the Greenbergs retain their rights regarding fees "if the issue is not resolved amicably by agreement." (Exhibit B to Motion to Set Outgoing Attorney's Fees). Not a word is mentioned regarding "cause" for the discharge. Also, in his affirmation, Anthony Gair states that at the time his firm replaced the Alpert Firm as attorneys for the Greenbergs "it was agreed that the total amount of all legal fees for both firms could not exceed one-third of the total amount recovered after reimbursement for attorney's fees." (Affirmation of Anthony H. Gair at ¶ 6). These statements clearly establish that at the time of the dismissal of the Alpert Firm, both the Greenbergs and the Gair

Firm anticipated that Alpert & Kaufman would be entitled to some fee. Therefore, the Court finds that the Alpert Firm was not discharged for cause and maintains a charging lien for its fee. *See Calabro v. Bd. Of Educ. Of City of New York*, 39 A.D.3d 680, 681, 834 N.Y.S.2d 309, 310 (2d Dep't 2007).

### B. As to Determination of the Fee

The Alpert Firm requests a reasonable fee for the work that it performed on the case, including: "interviewing the clients; reviewing and analyzing voluminous records . . .; ordering a private investigator to make an exhaustive investigation of the accident; obtaining police photographs of the accident scene; preparation of summons and complaint; receipt and review of defendants' answer, interrogatories, document demand, expert witness information; putting Erie Insurance Company on notice of a possible underinsured/uninsured motorist claim; sen[ding] for MV104 reports of all drivers involved in the accident; and numerous telephone conversations with clients, insurance adjustors and health providers." (Affirmation of Morton Alpert at ¶ 18). On the other hand, the Gair Firm asserts that if this Court should find that attorney's fees are warranted, it should limit the Alpert Firm's proportionate share of the work to a few hours spent drafting a pro-forma complaint.

A discharged attorney may elect to receive compensation immediately based on quantum meruit or on a contingent percentage fee based upon his or her proportionate share of the work performed. *Fernandez v. New York City Health and Hospitals Corp.*, 238 A.D.2d 544, 545, 656 N.Y.S.2d 687, 687–88 (2d Dep't 1997). Where the discharged attorney does not elect at the time of his discharge to receive compensation based on quantum meruit, he is presumed to elect to have his fee measured by a percentage of the recovery

based on his proportionate share of the work performed. *Buchta v. Union Endicott Central School Dist.,* 296 A.D.2d 688, 689, 745 N.Y.S.2d 143, 145 (3d Dep't 2002); *Fernandez,* 238 A.D.2d at 545, 656 N.Y.S.2d at 688.

In determining each firm's proportionate share of the work, the Court considers the time and labor involved, the difficulty of the case, the skill required to handle the matter, the results achieved, the amount of money involved, and the fee customarily charged for similar services. *See Ross v. Mitsui Fudosan,* 1998 WL 556171, at *2 (S.D.N.Y. Sept.1, 1998); *Buchta,* 296 A.D.2d at 689–90, 745 N.Y.S.2d at 145. Here, the Alpert Firm did not submit time records in support of the services it rendered and claims that it kept none. However, there is sufficient detail in the parties' papers to provide the Court with sufficient data to determine a reasonable apportionment of the fees. *See Buchta,* 296 A.D.2d at 690, 745 N.Y.S.2d at 145.

Although the parties characterize the work done by the Alpert Firm differently, it is undisputed that it engaged in preliminary interviews and fact gathering; hired a private investigator to uncover the circumstances of the accident; and drafted, served, and filed the summons and complaint that started the action. The Alpert Firm did the proper and necessary preliminary work and promptly served a summons and complaint. The work of the Gair firm was far more extensive. It responded to defendants' outstanding discovery demands; amended the complaint; added a party; conducted further discovery and depositions; retained a medical expert; and secured the settlement.

It is also undisputed that the case was a relatively uncomplicated personal injury action with perfect liability. In light of the above factors, the Court finds that a fee of five percent of the net attorney's fees of $369,614.33, namely the sum of $18,480.72, is reasonable for the Alpert Firm's work on the case. *See Podbielski v. KMO 361 Realty Assocs.,* 6 A.D.3d 597, 597, 774 N.Y.S.2d 826, 827 (2d Dep't 2004) (granting counsel five percent of the net contingency fee for providing advice to appellate counsel and arranging for the collection of judgment); *Buchta,* 296 A.D.2d at 690, 745 N.Y.S.2d at 145 (allowing ten percent of the net contingency fee to counsel for three years of work, limited to conducting a preliminary investigation and filing a notice of claim); *Vallejo,* 2007 WL 10386, at *5 (awarding forty percent of the net legal fees to originating attorney who filed complaint and kept action alive for three years).

### C. As to Who Should Pay the Alpert Firm's Fee

There is an unusual twist in the fee arrangement between the Gair Firm and the Greenbergs. In the covering letter from Anthony H. Gair to Barry F. Greenberg dated February 22, 2006 it is stated: "It is understood that you and your wife will be solely responsible for any fees awarded your out-going attorneys. We agree that we will represent you in any fee dispute with the out-going attorneys at no additional cost." In addition, the Gair Firm's retainer statement, dated March 3, 2006, filed with the Office of Court Administration states that "[a]ny fees awarded to the out-going Attorneys, Alpert & Kaufman, will be the sole responsibility of the plaintiffs." (Retainer Statement of Robert Conason (March 3, 2006)). This agreement is contrary to the usual situation, in which the prior attorney would be paid its portion from the fee received by the incoming firm, rather than by the client.

An affidavit submitted by Irene N. Greenberg dated March 8, 2007 states: "I have read the Affirmation of Anthony

H. Gair of Gair, Gair, Conason, Steigman, & Mackauf and concur fully with everything set forth therein." Accordingly, the Court assumes that the Greenbergs agreed to the condition imposed by the Gair Firm that the clients would be solely responsible for any fees to the Alpert Firm. There is no indication that the Greenbergs were unaware of or objected to this arrangement. Therefore, the Court finds that the Alpert Firm's fee shall be paid by Irene and Barry Greenberg in accordance with their agreement with the Gair Firm.

### D. As to Sanctions Requested By the Alpert Firm

The Alpert Firm alleges that the Gair Firm should be sanctioned for attempting to deceive this Court by attaching an incomplete version of the original complaint to its moving papers in an attempt to create the appearance that the complaint was insufficient. While the Gair Firm acknowledges that the complaint appended to its motion was incomplete, it points out that the complaint was submitted in the exact form that the Alpert Firm transmitted it. The documents submitted support the Gair Firm's explanation. A facsimile copy of the complaint transmitted from the Alpert Firm on December 22, 2005 appears to have been sent without the page in question. Therefore, the request for sanctions by the Alpert Firm is denied.

### III. CONCLUSION.

Based on the foregoing, it is hereby

**ORDERED,** that attorney's fees in the amount of $18,480.72 be paid by Irene N. Greenberg and Barry Greenberg to Alpert & Kaufman LLP either (1) within twenty days after receipt of the settlement amount, or (2) if the settlement amount has already been paid, within twenty days after a copy of this decision and order is served on the Gair Firm and the Greenbergs by certified mail, return receipt requested.

**SO ORDERED.**