## State of New York
### Supreme Court, Appellate Division
### Third Judicial Department

Decided and Entered:  December 17, 2015                    520534
_____

ZAYTUNE DOVIAK, Individually
    and as Guardian ad Litem of
    ROBERT DOVIAK,
                        Appellant,

        v                                          MEMORANDUM AND ORDER

LOWE'S HOME CENTERS, INC.,
    et al.,
                        Defendants.

FINKELSTEIN & PARTNERS, LLP,
    et al.,
                        Respondents.

(And Two Third-Party Actions.)
_____


Calendar Date:  October 14, 2015

Before:  Lahtinen, J.P., McCarthy, Lynch and Devine, JJ.

                            _____


        Phillips & Paolicelli, LLP, New York City (Steven J.
Phillips of counsel), for appellant.

        Furman, Kornfeld & Brennan, LLP, New York City (A. Michael
Furman of counsel), for respondents.

                            _____


Lahtinen, J.P.

        Appeals (1) from an order of the Supreme Court (Work, J.),
entered April 22, 2014 in Ulster County, which, among other
things, granted an application by Finkelstein & Partners, LLP for
an order directing, among other things, the payment of counsel
fees and disbursements, and (2) from the judgment entered

thereon.

This appeal primarily involves a dispute about counsel fees following a multi-million dollar recovery in a personal injury action. The underlying facts of that action are set forth in an earlier appeal (63 AD3d 1348 [2009]). Briefly, Robert Doviak suffered catastrophic injuries when he fell at a construction site and plaintiff — his wife and guardian ad litem — retained Finkelstein & Partners, LLP (hereinafter Finkelstein). During the eventual seven-day jury trial, several settlement offers were reportedly rejected by plaintiff, including a final one of $12 million before summations. The jury returned a verdict for a little over $3.7 million. Finkelstein then moved for a new trial or significant additur, which Supreme Court (Egan Jr., J.) partially granted in an order entered in March 2007 directing a new trial on damages unless defendants stipulated to increase damages by $3.1 million. Defendants so stipulated, bringing the total damages to about $6.8 million. As relevant to the current appeal, that award generated counsel fees of $1,892,760.31 under the contingent fee retainer agreement.

Disagreements about various aspects of the judgment delayed entry thereof until December 2007. Prior thereto, plaintiff had ostensibly stopped communicating with Finkelstein and retained new counsel. After the judgment was entered, plaintiff's new counsel moved to resettle the judgment, which was granted in part in an order and ensuing amended judgment entered in July 2008. Plaintiff's new counsel perfected the appeal that had been filed by Finkelstein, and we, among other things, increased damages by $2.5 million (63 AD3d at 1356-1357), making total damages of about $9.3 million. This resulted in additional contingency counsel fees of $707,106.

In the interim, plaintiff, eventually represented by Phillips & Paolicelli, LLP (hereinafter Phillips),[1] commenced a

---

[1]  Although there is confusion in the record about exactly who plaintiff retained after Finkelstein and when, for purposes of this decision, we hereinafter refer to plaintiff's new counsel as Phillips without making any determination as to any other

legal malpractice action in Orange County against Finkelstein alleging, among other things, that the trial settlement offer of $12 million had not been communicated by Finkelstein to plaintiff. After an appeal to the Second Department (Doviak v Finkelstein & Partners, LLP, 90 AD3d 696 [2011]), that case moved to a seven-week jury trial, which resulted in the jury finding no legal malpractice by Finkelstein. In addressing a posttrial motion in that action, Supreme Court (Ecker, J.) noted that certain aspects of plaintiff's allegations that Finkelstein had been discharged for cause had not been decided in the Orange County action and should be heard in connection with the pending fee dispute in the underlying Ulster County action.

Plaintiff then moved in the Ulster County action to, among other things, discharge Finkelstein's liens in that action. In a thorough written decision, Supreme Court (Work, J.) addressed a host of remaining issues about the disputed fees and disbursements. The court was unpersuaded by plaintiff's contention that Finkelstein was discharged for cause so as to justify denying Finkelstein any counsel fees. As for the counsel fees of $1,892,760.31 generated from the pre-appeal action, Supreme Court reduced Finkelstein's fee by $30,000 as sanctions for several errors by Finkelstein that, ultimately, had not adversely affected plaintiff but caused delay and necessitated additional legal work. The court further directed that $40,000 from the pre-appeal counsel fees should be paid to Phillips for its postverdict, pre-appeal legal work. The court thus awarded Finkelstein $1,822,760.31 in counsel fees for pre-appeal legal work and authorized Finkelstein to be reimbursed for its disbursements of $199,126.73. As for the additional counsel fees of $707,106 from the successful appeal, Supreme Court awarded two thirds of such amount to Phillips and one third to Finkelstein.[2]

_____

counsel that may have been involved at some point.

[2] By the time the judgment on appeal was entered, changes had been made to various amounts (including counsel fees) set forth in the earlier order reflecting, among other things, accrued interest. For example, the May 2014 judgment recited that the additur from the appeal resulted in counsel fees

Plaintiff appeals.

We consider first plaintiff's argument that Finkelstein should not get any counsel fees because it was discharged for cause. "[A] client has an absolute right, at any time, with or without cause, to terminate the attorney-client relationship by discharging the attorney" (Campagnola v Mulholland, Minion & Roe, 76 NY2d 38, 43 [1990]). "If the discharge is with cause, the attorney has no right to compensation or to a retaining lien" (Teichner v W & J Holsteins, 64 NY2d 977, 979 [1985] [citations omitted]). A "for cause" termination must be based on more than "a client's 'general dissatisfaction' with the attorney's performance" (Wiggins v Kopko, 105 AD3d 1132, 1134 [2013], quoting De Luccia v Village of Monroe, 180 AD2d 897, 899 [1992]) and typically involves a "significant breach of legal duty" such that the client can establish that the "attorney's conduct constituted a failure to properly represent [the client's] interests" (Antonmarchi v Consolidated Edison Co. of N.Y., 678 F Supp 2d 235, 241 [SD NY 2010] [internal quotation marks and citations omitted]; see Greenberg v Cross Island Indus., 522 F Supp 2d 463, 467 [ED NY 2007]).

The most serious allegation that could have supported a "for cause" termination – i.e., the purported failure to inform plaintiff of the $12 million settlement offer – was resolved in Finkelstein's favor during plaintiff's unsuccessful malpractice action. Plaintiff now relies on a litany of mostly postverdict infirmities by Finkelstein. Supreme Court (Work, J.) fully analyzed each of the purported errors and ethical breaches and we discern no reason to depart from that court's conclusions. With respect to Finkelstein's application to Supreme Court (Egan Jr., J.) for its counsel fees without providing adequate notice to plaintiff, the fee request was consistent with the retainer agreement, it was made at a time when plaintiff had apparently ceased communicating with Finkelstein and Supreme Court (Work, J.) found no willfulness by Finkelstein and noted no harm to plaintiff. Given Finkelstein's extensive legal work in this

exceeding $1.2 million. For purposes of consistency, the amounts used in the April 2014 decision and order are used herein.

complex case that culminated in a generally favorable result for plaintiff, this error was insufficient under all the relevant circumstances to serve as a basis to deny Finkelstein any counsel fees, and Supreme Court's decision to reduce Finkelstein's fee by $10,000 was within its discretion and an appropriate sanction.

The initial incorrect inclusion in the proposed judgment of a set off for plaintiff's children's Social Security disability benefits was eventually corrected and, while the error contributed to the delay in final resolution of the litigation, it was adequately addressed by Supreme Court's reduction of Finkelstein's fee by an additional $10,000.  The remaining errors have been considered and, to the extent they remained viable after the jury verdict in favor of Finkelstein in plaintiff's malpractice action, do not rise to the level of a significant breach of Finkelstein's duty to plaintiff or reveal that Finkelstein failed to properly represent plaintiff's interest to such an extent as to justify termination for cause.  We further agree with Supreme Court that Finkelstein adequately established the amount of its disbursements for which it was entitled to be reimbursed under the retainer.

Nor are we persuaded that Supreme Court erred in the manner in which it divided the counsel fees generated from the additur resulting from the appeal to this Court.  An attorney's "charging lien does not merely give an attorney an enforceable right against the property of another, it gives the attorney an equitable ownership interest in the client's cause of action" (LMWT Realty Corp. v Davis Agency, 85 NY2d 462, 467 [1995]; see Judiciary Law § 475).  Although the retainer provided that it did not cover an appeal, it did specifically cover any monies that plaintiff received by reason of the action and further provided for a reasonable fee should there be an appeal.  Supreme Court noted that Finkelstein successfully developed the record that became the basis for this Court's additur.  Finkelstein also filed a notice of appeal and took steps, including ordering the trial transcript, toward perfecting the appeal.  Further, Finkelstein had researched, prepared and presented to the trial court the partially successful motion for, among other things, additur, which provided the foundation — expanded upon by Phillips — for the successful appeal.  The relevant language of

the retainer as well as the outcome at the trial level were materially different here than in <u>Shaw v Manufacturers Hanover Trust Co.</u> (68 NY2d 172, 175-176 [1986]), a case relied upon by plaintiff.  The retainer did not forfeit a fee upon an adverse trial verdict, plaintiff's trial in the underlying personal injury action did not end adversely to plaintiff, and Finkelstein's retainer entitled it to a fee based on monies recovered by reason of the claim.  Supreme Court's division of the counsel fees resulting from the appeal was appropriate (<u>see generally</u> <u>Matter of Cohen v Grainger, Tesoriero & Bell</u>, 81 NY2d 655, 658-660 [1993]).

Finally, in light of the proof in the record, Supreme Court acted well within its discretion in setting quantum meruit fees of $40,000 for Phillips for legal work conducted postverdict and pre-appeal (<u>see</u> <u>Chernofsky & DeNoyelles v Waldman</u>, 212 AD2d 566, 566 [1995]).  The remaining arguments have been considered and are unavailing.

McCarthy, Lynch and Devine, JJ., concur.

ORDERED that the order and judgment are affirmed, with costs.

ENTER:

Robert D. Mayberger
Clerk of the Court