IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 110,483

MAHNAZ CONSOLVER,
*Appellant*,

v.

CHRIS HOTZE,
*Defendant*,
and
(BRADLEY A. PISTOTNIK and the AFFILIATED ATTORNEYS
OF PISTOTNIK LAW OFFICES, P.A.),
*Appellees.*

SYLLABUS BY THE COURT

1.

An attorney employed under a contingency fee contract who is discharged without cause is limited to a quantum meruit recovery for the reasonable value of the services rendered.

2.

All the factors identified in K.S.A. 2016 Supp. 7-121b(a) and Kansas Rule of Professional Conduct 1.5(a) (2017 Kan. S. Ct. R. 292)—including whether the fee agreement is fixed or contingent—are relevant to the equitable determination of the reasonable value of legal services rendered.

Review of the judgment of the Court of Appeals in 51 Kan. App. 2d 286, 346 P.3d 1094 (2015). Appeal from Sedgwick District Court; J. PATRICK WALTERS, judge. Opinion filed June 9, 2017. Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed.

*Stephen L. Brave*, of Brave Law Firm, LLC, of Wichita, argued the cause and was on the briefs for appellant.

*Jonathan Sternberg*, of Jonathan Sternberg, Attorney, P.C., of Kansas City, Missouri, argued the cause, and *Jennifer M. Hill,* of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, was with him on the briefs for appellees.

The opinion of the court was delivered by

STEGALL, J.: This case concerns a fee dispute between two attorneys—Bradley A. Pistotnik and Stephen L. Brave—each of whom represented Mahnaz Consolver at different stages of her personal injury lawsuit. Pistotnik filed the case after Consolver engaged him through a contingency fee agreement. Although Consolver and Pistotnik's relationship was strained throughout the representation, it endured through discovery to the mediation stage of the case, during which Pistotnik and defense counsel agreed that defendant would offer $300,000 to settle the case if Consolver could show that she needed an additional surgery to repair her knee. Before defense counsel could make a formal offer, however, Consolver terminated Pistotnik without cause.

Immediately thereafter, Consolver hired Brave, who later settled the case for $360,000. Pistotnik filed an attorney lien on the judgment, and following an evidentiary hearing, the district court found that Pistotnik was entitled to a fee in the amount of $86,944.27 and expenses in the amount of $10,156.81. Consolver appealed, and the Court of Appeals reversed the district court. We granted review.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2011, Consolver hired Bradley A. Pistotnik of Affiliated Attorneys of Pistotnik Law Offices, P.A., to represent her in a personal injury action against Chris

2

Hotze for injuries arising out of a car accident. Prior to filing the case, Consolver signed a standard contingency fee agreement with Pistotnik providing that Pistotnik would advance all expenses and labor in the pursuit of Consolver's claims and that Consolver would owe nothing in the event no recovery was obtained. If there was a recovery, the fee agreement required Pistotnik to be paid one-third of the amount after reimbursing expenses or, if the recovery occurred after the pretrial conference, then 40 percent of the amount after expenses. The contract was silent regarding what would occur if the lawyer-client relationship terminated before Consolver's claim was resolved.

Through Pistotnik, Consolver filed a petition in Sedgwick County District Court against Hotze, alleging that in February 2011, a vehicle being driven by Hotze collided with another vehicle, which resulted in injuries to Consolver. Hotze denied many of the allegations and requested a jury trial. Consolver originally claimed damages in the amount of $1,130,000 but later increased her claim to $1,405,961.40. A trial date was eventually set for August 7, 2012.

Shortly after the representation began, Consolver and Pistotnik's relationship began to deteriorate. The record before us details numerous disputes between the two, but we need not recount them here. Highly summarized, the record indicates that Consolver believed Pistotnik was too busy to focus on her case and did not pursue it with sufficient zeal, while Pistotnik believed that he pursued Consolver's claims with prudence and skill and gave her case exactly the level of attention it required.

In May 2012, the parties to the lawsuit spent a day in mediation attempting to settle the case. Pistotnik claimed that mediation "[d]iscussions concluded with the understanding that an offer for the sum of three hundred thousand dollars ($300,000.00) would be made, contingent upon proof that [Consolver] would require additional surgery[,] and [Hotze] was requiring additional records and bills from health care

3

providers for recent treatment." In support of this claim, Pistotnik provided an affidavit from Hotze's attorney Craig Kennedy detailing the events surrounding mediation. Kennedy averred that on the day of mediation, he and Pistotnik had agreed that a $300,000 settlement offer would be made to Consolver if she provided proof that she was to undergo a second knee surgery. Kennedy and Pistotnik spoke on several occasions after mediation about getting the necessary medical records.

The affidavit further stated that Kennedy received an email from Pistotnik on June 20, 2012, stating that Consolver had been scheduled for surgery. One week later on June 27, 2012, Kennedy told Pistotnik in person that he was obtaining authorization for the $300,000 settlement and would be sending out a formal offer letter in the next several days. Kennedy called Pistotnik the next day—June 28, 2012—to inform him that he expected to receive authority to offer a $300,000 settlement. On the same day he called Pistotnik, Kennedy received an email from Pistotnik informing him that Consolver would no longer accept the $300,000 settlement offer. An email from Pistotnik to Kennedy indicates that Consolver rejected the $300,000 because her doctor had told her that she would need surgery next month and a knee replacement in the future. Pistotnik said in the email that he thought they would "need to get into the 400k range to get settled."

The day after receiving the email, Kennedy received official authority to submit the $300,000 offer. Because Kennedy was unable to contact Pistotnik that day, he sent Pistotnik an email on June 30, 2012, offering $300,000 to settle the case. On July 2, 2012, Kennedy confirmed the offer through a letter sent to Pistotnik. Finally, the affidavit stated that Hotze and his insurance carrier had made no offers in excess of $300,000 and that all settlement negotiations had been with Pistotnik Law Offices. Meanwhile, however, Consolver had terminated Pistotnik's representation on June 28.

Consolver disputed this version of facts at the hearing below. She claimed the last offer she received during mediation was $225,000, which she rejected. According to Consolver, Kennedy suggested he might be able to increase the offer to $300,000 if Consolver provided proof that she was going to undergo another surgery. But Consolver alleged that Pistotnik did not try to obtain proof of another surgery until June 19, 2012. Consolver claimed that Kennedy only communicated the $300,000 offer to Pistotnik after the termination occurred. Consolver contended that Kennedy knew Pistotnik had been terminated when the offer was made and that Kennedy knew Consolver had indicated on June 28 that she was not going to accept it. However, despite not having proof that Consolver would need an additional surgery, Kennedy still offered $300,000 to Pistotnik on July 2.

On the day of the termination—June 28, 2012—the pretrial conference was fast approaching. Consolver admitted she was aware Pistotnik's contingency fee rose to 40 percent when the case reached the pretrial stage. Although she claimed this was not the reason she terminated Pistotnik, she admitted she did not want to pay Pistotnik the larger fee.

On July 2, 2012, Pistotnik and his firm filed a notice of attorney's lien "pursuant to K.S.A. 7-108 on the tendered settlement offer of $300,000.00 pursuant to written contract providing that expenses would be reimbursed and that attorney fees would be one-third." According to Pistotnik, "[t]he lien amount [was] $10,156.81 for litigation expenses and costs plus attorney's fees in the amount of $96,614.39 for a total of $106,771.20." Consolver then filed an application with the district court to determine the amount due, if any, on the attorney lien pursuant to K.S.A. 7-109. Consolver argued that Pistotnik was not entitled to the contingency fee recovery because the case had not been settled and Pistotnik was only entitled to the reasonable value of services actually provided.

5

Pistotnik argued in response that Consolver deliberately changed lawyers after mediation and immediately before a fee escalation to obtain a lower fee with a new attorney. He agreed that his motion was not yet ripe for determination but argued that if Consolver eventually recovered, Pistotnik's contingency in the contract had been met. Pistotnik further argued that Kansas law does not require a quantum meruit evaluation if there is a contingency fee contract. Pistotnik detailed the expenses he had incurred during the year and 2 months he had represented Consolver, which included producing a file of over 5,000 pages, creating and sending a settlement brochure to defendant's insurance carrier, taking numerous depositions, hiring three expert witnesses, obtaining reports from all expert witnesses, and frequently consulting with Consolver.

While the amount of Pistotnik's attorney lien remained unresolved, Consolver's prosecution of her tort claims continued with new representation. The same day Consolver terminated Pistotnik, she hired Stephen Brave. Pistotnik withdrew from the case, and the district court reopened discovery and set new deadlines. Brave conducted additional discovery, including obtaining different expert reports. Brave also obtained the 911 call from the accident and raised a new argument that arbitration was binding on the insurance company. The district court eventually ruled against Consolver on this issue, and Kennedy later testified that although the issue took a long time to resolve, it did not change the value of the case.

Brave eventually settled the case against Hotze for $360,000. Kennedy testified that the increase from $300,000 to $360,000 was due to the fact that Consolver became employed, increasing her potential damages for loss of income. However, Brave and Pistotnik were unable to resolve the disputed lien. Therefore, with a settlement obtained and funds available to make payment for the expenses of litigation and appropriate attorney fees, the district court conducted an evidentiary hearing to determine the appropriate division of fees. After hearing extensive and at times hostile testimony, the

district court entered an order awarding Pistotnik $86,944.27 in attorney fees and $10,156.81 in expenses. The court held that because the contingency had not occurred prior to the termination of the agreement between Consolver and Pistotnik, Pistotnik was precluded from recovery under the contract. As such, his claim was limited to one sounding in quantum meruit—*i.e.*, the reasonable value of the services actually rendered. The district court considered K.S.A. 2016 Supp. 7-121b and Kansas Rule of Professional Conduct (KRPC) 1.5(a) (2017 Kan. S. Ct. R. 292) as controlling law for determining the reasonableness of the fee. After listing each individual factor in Rule 1.5(a), the court offered the following analysis:

"The Court heard uncontroverted testimony from defense counsel, Craig Kennedy, that Mr. Pistotnik did a majority of the work on the case; that this was not an easy case for plaintiff to prevail due to causation and fault issues; that the contingency fee and expenses were reasonable; and that the only reason the settlement offer increased was due to Plaintiff's employment. Mr. Kennedy also testified Mr. Pistotnik has the ability and reputation to handle these types of cases. Mr. Pistotnik testified as to extensive work and preparation on this case; that his relationship with the Plaintiff lasted for over 14 months; and that she was a difficult client due to her desire to record conversations with medical professionals without their knowledge and assent. Plaintiff testified Mr. Pistotnik's fee agreement was reasonable, although she had never read the agreement, and that she trusted him completely. Further, Plaintiff testified she was aware that Mr. Pistotnik's fee would increase if the case was not resolved at mediation.

"As stated earlier, it is important to note Mr. Pistotnik did not finalize the settlement. Plaintiff's current counsel settled the case. In that regard, it would appear to the Court that the amount of work performed on this case, by both counsel, from beginning to completion should be prorated on a percentage basis. In fact, Judge Yost contemplated that scenario in the *Kyle Jim* decision, page 72, in which he stated 'This court construes Rule 1.5(a)(8) to mean that, in a contingent fee case, even where the contingency has not been met, this court can consider, among other factors, what the contingent fee would have been had the contingency been completed.'

7

"The Court finds the case was 90% complete at the time the $300,000.00 offer was made during mediation while Mr. Pistotnik was the attorney of record. The Court finds that Mr. Pistotnik is entitled to 90% of his one-third contingency fee of $300,000.00 . . . . The Court finds Mr. Pistotnik's expenses of $10,156.81 are reasonable.

"For the above reasons, it is the judgment of this Court that Bradley A. Pistotnik is awarded an attorney fee in the amount of $97,101.08 ($86,944.27 + $10,156.81) and the Clerk of the District Court of Sedgwick County Kansas shall release said amount upon proper order. The remaining amount shall be released to attorney Stephen L. Brave upon proper order."

On appeal, the Court of Appeals reversed the district court, finding that it "stepped outside the legal principles guiding quantum meruit to premise the fee award to Pistotnik on the contingency percentage in the contract." *Consolver v. Hotze*, 51 Kan. App. 2d 286, 291, 346 P.3d 1094 (2015). According to the Court of Appeals, the district court erred as a matter of law when it calculated the amount due because "[a] quantum meruit payment is fundamentally incompatible with a contingency fee in a contract for legal services." 51 Kan. App. 2d at 291. In reaching this conclusion, the panel stated that a contingency fee builds in a premium over and above the fair market value of the attorney's services to account for the risk of no recovery—and thus no payment. The panel held that the payment of such premiums confers no added benefit on the client. From this, the panel concluded that the terms of the contingency fee agreement were irrelevant to the quantum meruit determination and could not be considered. To rule otherwise "would effectively require the client to subsidize the lawyer's other contingent-fee work." 51 Kan. App. 2d at 291.

The Court of Appeals held that instead, the lodestar method provided the appropriate standard for calculating a quantum meruit award "by determining a reasonable hourly rate for the legal services and multiplying that by the reasonable

8

number of hours required to handle the litigation." 51 Kan. App. 2d at 291-92 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 [1983] [outlining lodestar method]; *Citizens Utility Ratepayer Bd. v. Kansas Corporation Comm'n*, 47 Kan. App. 2d 1112, 1126, 284 P.3d 348 [2012]; *Kroshnyi v. U.S. Pack Courier Services, Inc.*, 771 F.3d 93, 108 [2d Cir. 2014]).

> "In addition, the court should take into account the criteria outlined in KRPC 1.5(a) (2014 Kan. Ct. R. Annot. 515) for determining the reasonableness of a fee, *excluding whether the fee is fixed or contingent*. The KRPC 1.5 factors consider the time required, customary fees or rates for comparable legal services, constraints the litigation imposed on the lawyer in terms of deadlines or forgoing other work, the experience and skill of the lawyer, the nature of the ongoing professional relationship (if any) between the lawyer and the client, the value of what was at stake in the case, and the result obtained. They incorporate and expand upon the lodestar components of reasonable rate and reasonable time." (Emphasis added.) 51 Kan. App. 2d at 292.

The panel instructed the district court on remand to "determine the quantum meruit fee due Pistotnik using the lodestar method with any appropriate modifications consistent with the relevant criteria in KRPC 1.5." 51 Kan. App. 2d at 293. In doing so, it stated: "We recognize this may require reopening the evidentiary record and trust the district court to do so in a way promoting efficient resolution of the fee dispute." 51 Kan. App. 2d at 293.

In a footnote, the panel addressed the following issues with the district court's factual findings:

> "Given our disposition of the case, we need not review the implications of some of the district court's factual findings that might be fairly questioned. For example, the district court relied on the $300,000 settlement offer as a basis for its fee calculation. The offer, however, was extended after Pistotnik had been terminated. The last offer to

Consolver while Pistotnik represented her was $225,000. More troubling, however, the $300,000 offer was triggered by a misrepresentation—later corrected—that Consolver would undergo additional surgery. We fail to see how a settlement offer obtained through a mistaken representation should be considered at all in establishing a reasonable fee. The district court also never explained how it determined 'the case was 90% complete' when Consolver terminated Pistotnik. The percentage has no anchor in the district court's findings of fact or conclusions of law." 51 Kan. App. 2d at 294-95 n.2.

Pistotnik petitioned this court for relief, and we granted review.

## ANALYSIS

The issue in this case is straightforward—we must decide whether the district court abused its discretion when it determined the reasonable value of Pistotnik's services by considering, in part, the terms of the contingency fee agreement between Pistotnik and Consolver. The parties agree that the appropriate standard of review is an abuse of discretion. "If a court lawfully awards fees, the amount awarded is reviewed for abuse of discretion." *Rinehart v. Morton Buildings, Inc.*, 297 Kan. 926, 942, 305 P.3d 622 (2013); see *First Nat'l Bank of Omaha v. Centennial Park,* 48 Kan. App. 2d 714, 721, 303 P.3d 705, *rev. denied* 297 Kan. 1244 (2013) ("Under Kansas law, 'the application of an equitable doctrine rests within the sound discretion of the trial court.'") (quoting *National City Mortgage Co. v. Ross*, 34 Kan. App. 2d 282, 287, 117 P.3d 880, *rev. denied* 280 Kan. 984 [2005] [quoting *Bankers Trust Co. v. United States of America*, 29 Kan. App. 2d 215, 218, 25 P.3d 877 (2001)]); see also *Green v. Higgins*, 217 Kan. 217, 220, 535 P.2d 446 (1975) ("Like other doctrines of equity, the clean hands maxim is not a binding rule, but is to be applied in the sound discretion of the court."). A district court abuses its discretion when no reasonable person would adopt the district court's position. *Cresto v. Cresto*, 302 Kan. 820, 848, 358 P.3d 831 (2015). An abuse of discretion also occurs when

10

the district court's decision is based on an error of law or fact. *Wiles v. American Family Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

An overwhelming majority of states, including Kansas, have held that an attorney employed under a contingency fee contract who is discharged without cause is limited to a quantum meruit recovery for the reasonable value of the services rendered. 1 Rossi, Attorneys' Fees § 3:12 & n.4 (3d ed. 2010) (cataloguing decisions); see *In re Harris*, 261 Kan. 1063, 1073, 934 P.2d 965 (1997); see also Annot., 56 A.L.R.5th 1. Most recently, we have explained, "Generally, an attorney who is discharged before the occurrence of the contingency provided for in a contingency fee contract may not recover compensation on the basis of the contract, but rather the attorney is entitled only to the reasonable value of the services rendered based upon quantum meruit." *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 904, 220 P.3d 333 (2009) (citing *Madison v. Goodyear Tire & Rubber Co.*, 8 Kan. App. 2d 575, Syl. ¶ 1, 663 P.2d 663 [1983]); see 1 Rossi, Attorneys' Fees § 3:10 ("It has long been held that an attorney discharged without fault may recover on a quantum meruit basis for the reasonable value of the services rendered up to the time of the discharge.").

> "Unjust enrichment/quantum meruit is an equitable doctrine. Unjust enrichment is the modern designation for the older doctrine of quasi-contract. The theory of quasi-contract was raised by the law on the basis of justice and equity regardless of the assent of the parties. The substance of an action for unjust enrichment lies in a promise implied in law that one will restore to the person entitled thereto that which in equity and good conscience belongs to that person." *Haz-Mat Response, Inc. v. Certified Waste Services Ltd.*, 259 Kan. 166, Syl. ¶ 5, 910 P.2d 839 (1996).

In determining Pistotnik's fees, the district court looked to KRPC 1.5 and K.S.A. 2016 Supp. 7-121b for guidance. The statute provides in pertinent part:

"[W]henever a civil action is commenced by filing a petition or whenever a pleading states a claim in a district court for damages for personal injuries or death arising out of the rendering of or the failure to render professional services by any health care provider, compensation for reasonable attorney fees to be paid by each litigant in the action shall be approved by the judge after an evidentiary hearing and prior to final disposition of the case by the district court. Compensation for reasonable attorney fees for services performed in an appeal of a judgment in any such action to the court of appeals shall be approved after an evidentiary hearing by the chief judge or by the presiding judge of the panel hearing the case. Compensation for reasonable attorney fees for services performed in an appeal of a judgment in any such action to the supreme court shall be approved after an evidentiary hearing by the departmental justice for the department in which the appeal originated." K.S.A. 2016 Supp. 7-121b(a).

The statute then continues by listing the same eight reasonableness factors contained in KRPC 1.5(a):

"In determining the reasonableness of such compensation, the judge or justice shall consider the following:

"(1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly.

"(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the attorney.

"(3) The fee customarily charged in the locality for similar legal services.

"(4) The amount involved and the results obtained.

"(5) The time limitations imposed by the client or by the circumstances.

"(6) The nature and length of the professional relationship with the client.

"(7) The experience, reputation and ability of the attorney or attorneys performing the services.

"(8) Whether the fee is fixed or contingent." K.S.A. 2016 Supp. 7-121b(a).

See KRPC 1.5 (2017 Kan. S. Ct. R. 292).

Recognizing that Pistotnik's contingency fee agreement had not been met at the time Consolver terminated his employment, the district court properly acknowledged that Pistotnik was limited to a quantum meruit recovery. But, as the district court also recognized, it does not necessarily follow that the existence of a contingency fee arrangement and the terms of that arrangement are entirely irrelevant to determining the equitable value of the services rendered. The district court properly utilized K.S.A. 2016 Supp. 7-121b and KRPC 1.5 to determine a reasonable fee. It ultimately decided that "the amount of work performed on this case, by both counsel, from beginning to completion should be prorated on a percentage basis." The district court found that Pistotnik had completed 90 percent of the work necessary to generate the $300,000 settlement offer which, though rejected, ultimately culminated in a much larger settlement of $360,000. The district court looked to the contingency fee agreement as a reasonable economic indicator of the value of that $300,000 settlement and prorated that value according to the amount of work Pistotnik had provided as determined factually by the court after hearing all of the evidence.

We cannot conclude that no reasonable person would reach the district court's decision. Indeed, a number of other courts have used this approach, which is known as the "quasi-quantum meruit" method. See *Matter of Gary E. Rosenberg, P.C. v. McCormack*, 250 A.D.2d 679, 680, 672 N.Y.S.2d 892 (1998) (finding that outgoing attorney was entitled to 20 percent of the total net contingent fee recovered in a personal

injury action); *Pearl v. Metropolitan Transp. Authority*, 156 A.D.2d 281, 283, 548 N.Y.S.2d 669 (1989) (holding that where attorney was retained under a contingent-fee agreement but was discharged prior to the occurrence of the contingency, he was entitled to a contingent percentage fee based on the proportional share of work performed on the case); *Martin v. Buckman*, 883 P.2d 185, 194 (Okla. App. 1994) ("Where a client, without cause, chooses to abrogate his lawyer's contingent fee contract and hire another attorney, the discharged lawyer is entitled to receive a portion of the contingent fee if and when the contingent event mentioned in the contract occurs."); see also *Buchta v. Union-Endicott Cent. School Dist.*, 296 A.D.2d 688, 690, 745 N.Y.S.2d 143 (2002).

We disagree with the Court of Appeals' belief that "[a] quantum meruit payment is fundamentally incompatible with a contingency fee in a contract for legal services." *Consolver,* 51 Kan. App. 2d at 291. Quantum meruit—which is Latin for "'as much as he has deserved'"—generally represents the reasonable value of the services performed. Black's Law Dictionary 1437 (10th ed. 2014); see *Shamberg*, 289 Kan. at 904. The panel's decision fails to recognize that Pistotnik—who was discharged without cause—assumed *in this case* some measure of risk that he would provide legal services and incur costs without payment if Consolver did not prevail. To begin from the premise that Consolver would recover entails a fair measure of hindsight bias. See *Miller v. Botwin*, 258 Kan. 108, 116, 899 P.2d 1004 (1995) ("Although comparing the 50% contingency fee with a fee computed on an hourly basis reveals an hourly fee in excess of $600 per hour for the South City property, that fact is not dispositive. [The attorney] bore the sole risk of receiving no fees in the event that no tax savings were realized.").

Likewise, to assert that the contingency fee "premium" confers no benefit on a plaintiff simply ignores economic reality. Were it not for such premiums, many injured plaintiffs would be unable to obtain representation at all. The reasoning of the Court of Appeals in this case is akin to a claim that a person who pays life insurance premiums on

14

a term life insurance policy receives no benefit from the policy if he or she does not die during the term. This is manifestly untrue. Shifting the risk of loss is widely understood to confer a significant economic benefit.

Finally, our review of the record indicates that the equities weigh in favor of Pistotnik, further supporting the district court's decision. According to the district court's findings, Consolver was aware that Pistotnik's contingency fee was about to increase at the time she discharged him. It makes sense that courts of equity would not permit clients to abuse their power to unilaterally terminate an attorney's representation in order to manipulate a contingency agreement that was freely entered into. See Comment, *Quantum Meruit in Ohio*: *The Search for a Fair Standard in Contingent Fee Contracts*, 18 U. Dayton L. Rev. 109, 134 (1992) ("Equity is disserved by allowing only quantum meruit recovery even when the contingency . . . is about to occur. . . . By allowing the client to wield this power, this approach may discourage the creation of contingent fee contracts. There is no rational reason for protecting such an abuse of a right.").

This is not to say, however, that a district court could not in the future use the lodestar method for calculating attorney fees when an attorney is discharged prior to the triggering of a contingency. We decline to formulate a precise standard for district courts to use in such situations. It is enough to say that *all* the factors identified in K.S.A. 2016 Supp. 7-121b(a) and KRPC 1.5(a) are relevant to the equitable determination of the reasonable value of legal services rendered. Given the district court's broad discretion in this area of the law, the district court's reliance on K.S.A. 2016 Supp. 7-121b(a) and KRPC 1.5(a), and the extensive fact-finding done by the district court, we see no reason to second-guess the outcome. The district court did not err as a matter of law and did not otherwise abuse its discretion.

The judgment of the Court of Appeals is reversed, and the judgment of the district court is affirmed.