*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:   November 17, 2016                522417
_____

In the Matter of the Estate
    of BRADLEY MARC GINSBURG,
                    Deceased.

HOWARD I. GINSBURG, as
    Administrator of the                    MEMORANDUM AND ORDER
    Estate of BRADLEY MARC
    GINSBURG, Deceased,
                    Respondent;

McCALLION & ASSOCIATES LLP
    et al.,
                    Appellants,
                    et al.,
                    Respondents.
_____

Calendar Date:   September 8, 2016

Before:   Garry, J.P., Egan Jr., Lynch, Rose and Aarons, JJ.

_____

        McCallion & Associates LLP, New York City (Kenneth F.
McCallion of counsel), for McCallion & Associates LLP, appellant,
and Leland T. Williams, Rochester, appellant pro se.

        Holmberg Galbraith, LLP, Ithaca (Anna K. Holmberg of
counsel), for respondent.

_____

Egan Jr., J.

        Appeals from those parts of an amended decision and a
decree of the Surrogate's Court of Tompkins County (Cassidy, S.),
entered June 19, 2015 and July 8, 2015, which granted
petitioner's motion to compromise the wrongful death claim

asserted by decedent's estate.

On February 17, 2010, Bradley Marc Ginsburg (hereinafter decedent), then a freshman at respondent Cornell University in Tompkins County, jumped to his death from the Thurston Avenue Bridge — one of several bridges extending across the gorges located on or near Cornell's campus. The bridge in question, which spans Falls Creek Gorge and connects two portions of Cornell's campus, is owned by respondent City of Ithaca. Petitioner, who is both decedent's father and an attorney licensed to practice in this state, was granted letters of administration in May 2011 and thereafter retained respondent Leland T. Williams as counsel for the estate. In late 2011, Williams commenced an action upon petitioner's behalf against, among others, Cornell and the City of Ithaca in the United States District Court for the Northern District of New York. The complaint set forth 14 causes of action sounding in, among other things, wrongful death and premises liability and sought damages in the amount of $180 million, including $12 million in punitive damages.

After District Court dismissed the punitive damages claim and all claims against those Cornell representatives or employees named in their individual capacities, petitioner terminated Williams' representation and retained respondent McCallion & Associates, LLP (hereinafter the firm) as counsel.[1] Thereafter, Kenneth F. McCallion (hereinafter McCallion) — a principal therein — entered into settlement negotiations with Cornell and the City of Ithaca upon petitioner's behalf. After much discussion, the parties devised a proposed settlement of the wrongful death claim — specifically, that petitioner would accept a monetary sum from the City of Ithaca and, as to Cornell, would agree that a scholarship would be established in decedent's

---

[1] District Court subsequently dismissed the balance of the negligence claims against Cornell and the City of Ithaca (alleging personal injury, conscious pain and suffering, in loco parentis and contractual relationship) — leaving only the wrongful death claim intact.

name.[2]  While McCallion was not opposed to this resolution, he
advised petitioner via email that, "[b]efore [he] sign[ed] onto
any settlement proposal," petitioner and the firm would need to
"reach an understanding as to the allocation of any settlement
funds" — namely, that "the balance of the net cash component of
the settlement," then anticipated to be $200,000, would be
allocated to the firm as counsel fees.  In response, petitioner
advised District Court that he, in his capacity as co-counsel,
would be handling all further negotiations, and McCallion was
excluded from the settlement conferences that followed.

In September 2014, petitioner entered into stipulations of
settlement with Cornell and the City of Ithaca resolving the
wrongful death claim.  Specifically, the City of Ithaca agreed to
pay $100,000 in settlement of the District Court action against
it, and Cornell agreed to establish a perpetual scholarship in
memory of decedent.  Although documentation in the record
reflects that such scholarship, if funded by a private donor,
would have required an endowment of approximately $1.6 million,
the stipulation of settlement provided that the scholarship would
be established "using existing financial aid funds" and, inasmuch
as Cornell was neither "allocating any new money" to the
scholarship nor otherwise making any payment to petitioner, the
scholarship itself had "no monetary value" — except to the
student recipients thereof.  District Court thereafter signed off
on the respective stipulations of settlement.

In November 2014, petitioner sought leave in Surrogate's
Court to compromise the wrongful death claim against Cornell and
the City of Ithaca.  In conjunction therewith, petitioner asked
that both Williams and the firm (hereinafter collectively
referred to as respondents) be denied counsel fees — essentially
contending that Williams and McCallion each had engaged in
conduct that was contrary to the interests of the estate.
Respondents opposed petitioner's requests and cross-moved to,
among other things, disapprove the settlement agreements and
sanction petitioner in accordance with Judiciary Law § 487.  By

---

[2]  Cornell "made clear that this would be the only basis
upon which [it] would settle the case."

amended decision entered June 19, 2015, Surrogate's Court, among other things, granted petitioner's request to compromise and settle the wrongful death claim, allocated the $100,000 settlement received from the City of Ithaca to that claim and, after deducting for funeral fees ($19,080.63) and litigation expenses ($45,324.95 for the firm and $1,866 for Williams), awarded counsel fees to respondents consistent with the terms of the respective retainer agreements – $7,420.25 to Williams and $11,241.68 to the firm.  After deducting the fees and disbursements due to petitioner's attorney, petitioner and his spouse – as the sole distributees of decedent's estate – received $3,560.37.  Surrogate's Court thereafter entered a decree to that effect, and respondents now appeal from portions of the amended decision and decree – most notably with respect to the court's finding that the settlement with Cornell did not have any monetary value to decedent's estate and, hence, was not properly included in the computation of counsel fees.[3]

The crux of respondents' argument upon appeal is that Surrogate's Court abused its considerable discretion in permitting petitioner to compromise and settle the wrongful death claim against Cornell and the City of Ithaca – specifically, that Surrogate's Court improvidently determined that the scholarship established by Cornell in memory of decedent had no monetary value for purposes of computing the requested counsel fees.  We disagree.

There is no question that a client "may at any time before judgment, if acting in good faith, compromise, settle, or adjust his [or her] cause of action out of court without [counsel's] intervention, knowledge, or consent, notwithstanding any contingent fee agreement and even though he [or she] has agreed with [counsel] not to do so" (Dagny Mgt. Corp. v Oppenheim &

---

[3]  No appeal lies from the amended decision of Surrogate's Court; rather, it is the decree itself that constitutes an appealable paper (see Matter of Carvel, 97 AD3d 571, 571-572 [2012]; Matter of Cassini, 95 AD3d 1310, 1310 [2012]).  Accordingly, respondents' appeal from the amended decision is dismissed.

<u>Meltzer</u>, 199 AD2d 711, 713 [1993] [internal quotation marks and citation omitted]; <u>see</u> Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.2 [a]).  Similarly, "notwithstanding the terms of the agreement between them, a client has an absolute right, at any time, with or without cause, to terminate the attorney-client relationship by discharging the attorney" (<u>Campagnola v Mulholland, Minion & Roe</u>, 76 NY2d 38, 43 [1990]; <u>see</u> <u>Doviak v Lowe's Home Ctrs., Inc.</u>, 134 AD3d 1324, 1326 [2015], <u>lv denied</u> 27 NY3d 904 [2016]).  Finally, "Surrogate's Court is vested with broad discretion to fix the reasonable compensation of an attorney who renders legal services to a fiduciary of an estate, subject to modification only where that discretion has been abused" (<u>Matter of Benware</u>, 121 AD3d 1331, 1332 [2014] [citations omitted]).  Notably, such authority is "independent of the terms of a retainer agreement or the consent of interested parties to the requested compensation" (<u>Matter of Elenidis</u>, 120 AD3d 1229, 1231 [2014], <u>lvs denied</u> 24 NY3d 910 [2014], 25 NY3d 904 [2015]; <u>see</u> <u>Matter of Greenfield</u>, 127 AD3d 1189, 1191 [2015], <u>lv denied</u> 26 NY3d 904 [2015]).

Contrary to respondents' assertion, we discern no basis upon which to disturb the determination of Surrogate's Court that petitioner, a licensed and experienced real estate attorney, exercised due diligence in the performance of his fiduciary duties relative to decedent's estate, including giving careful consideration to the settlement offers at issue.  Nor are we persuaded that petitioner's ultimate decision to compromise and settle the wrongful death claim against Cornell and the City of Ithaca in exchange for $100,000 and the establishment of a perpetual scholarship in decedent's memory evidenced bad faith or otherwise called into doubt the performance of his fiduciary duties.  Hence, as to the award of counsel fees, the issue primarily distills to whether Surrogate's Court abused its discretion in concluding that the subject scholarship had no monetary value to decedent's estate.

The retainer agreement entered into between Williams and petitioner obligated petitioner to pay counsel fees in a specified percentage "of any net recovery obtained"; a similar provision in the agreement reached between the firm and petitioner entitled the firm to a fee in the amount of one third

"of any amounts received by [petitioner] by way of settlement, judgment or award, after deduction of any outstanding and unpaid expenses."  Respondents argue upon appeal, as they did in Surrogate's Court, that the perpetual scholarship established by Cornell in decedent's name had a minimum value of $1.6 million and, therefore, their respective contingent fees should be based upon such value plus the $100,000 monetary settlement received from the City of Ithaca.  Respondents' argument on this point, however, misses the mark.

To be sure, the record reflects that, if the memorial scholarship had been established by means of an endowment, a private donation of approximately $1.5 to $1.6 million would have been required to fund such scholarship in perpetuity.  As set forth in the affidavit from one of Cornell's representatives, however, "Cornell never offered an endowed scholarship and made clear that [it] would not do so."  Rather, Cornell repeatedly indicated "that existing financial aid funds would be used to fund the scholarship, that federal regulations applicable to Cornell as the administrator of such funds would apply, that the recipient(s) would have to be financial aid eligible, and that the recipient(s) would receive only the amount they would otherwise be qualified to receive under applicable federal law and Cornell financial aid policies."  To that end, the stipulation of settlement between petitioner and Cornell contains the following language: "Cornell is solely using existing financial aid funds to establish the scholarship . . . and is not allocating any new money to fund this scholarship.  Cornell [has] insisted, and the parties agreed[,] that Cornell would not make any payment to [petitioner] in any way whatsoever, whether monetary or otherwise.  There is no monetary value or any other value to [petitioner] with regard to this settlement and no such payment is incorporated in these terms of settlement.  The monetary value of the scholarship is only to those students who receive a scholarship and no one else."

Regardless of whether this language was inserted into the final stipulation of settlement at Cornell's behest (as the record suggests) or upon petitioner's insistence (as respondents assert), the fact remains that petitioner simply did not receive any money or any other tangible assets from Cornell as a result

of the settlement.[4]  Rather, as Surrogate's Court appropriately found, petitioner – in his representative capacity as the administrator of decedent's estate – received in settlement from Cornell only the sentimental, "symbolic or moral value" of the scholarship established in decedent's name.  As the scholarship itself clearly was not an asset of decedent's estate, Surrogate's Court did not abuse its discretion in computing respondents' respective counsel fees based solely upon the $100,000 monetary settlement received from the City of Ithaca.  To hold otherwise not only would ignore the plain language of the stipulation of settlement with Cornell but, further, would misconstrue the nature of the scholarship itself by assigning – to decedent's estate – a monetary value or benefit that exists only with respect to the scholarship's actual recipients.  Adopting respondents' valuation analysis also would obligate decedent's estate, which ultimately received less than $4,000 in settlement proceeds and otherwise is devoid of assets, to pay a six-figure bill for counsel fees – a result that hardly can be characterized as reasonable, equitable or just.  Respondents' remaining contentions, to the extent that they do not lie outside the jurisdiction of Surrogate's Court in the first instance (see SCPA 201), have been examined and found to be lacking in merit.

Garry, J.P., Lynch, Rose and Aarons, JJ., concur.

---

[4]  Indeed, as set forth in the affidavit of Cornell's representative, "Cornell never offered – and would not have established – the scholarship as an asset to the [e]state."

ORDERED that the appeal from the amended decision entered June 19, 2015 is dismissed, without costs.

ORDERED that the decree entered July 8, 2015 is affirmed, without costs.

ENTER:

Robert D. Mayberger
Clerk of the Court