No. 110,483

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

Mahnaz Consolver,
*Appellant*,

v.

Chris Hotze,
*Defendant*,
(Bradley A. Pistotnik and the Affiliated Attorneys
of Pistotnik Law Offices, P.A.),
*Appellees*.


SYLLABUS BY THE COURT

1.

Absent a contract term governing termination, a client discharging a lawyer retained on a contingent-fee basis typically must compensate the lawyer for the reasonable value of the services provided. The equitable doctrine of *quantum meruit* or unjust enrichment governs.


2.

Under a *quantum meruit* theory, a party conferring a benefit on another party is entitled to recover the value of the benefit conferred if the recipient knew of the benefit and retention of the benefit without compensation would be inequitable under the circumstances.


3.

A client has the right to terminate a contract for legal representation at any time with or without good cause.

1

4.

Payment based on *quantum meruit* depends on the value or worth of the benefit to the recipient. The recipient ought to owe an amount roughly equivalent to what he or she might reasonably expect to pay on the open market for the goods or services constituting the benefit.

5.

A *quantum meruit* payment is fundamentally incompatible with a contingency fee for legal services. By design, a contingency fee builds in a premium over and above the fair market value of the services provided to account for the risk of no recovery—and, thus, no payment—not only in that case but in other cases the lawyer considers or takes.

6.

The lodestar method of calculating attorney fees provides a sound foundation for determining a *quantum meruit* award. A court makes a lodestar fee calculation by determining a reasonable hourly rate for the legal services and multiplies that by the reasonable number of hours required to handle the litigation. In addition, the court should take into account the criteria outlined in Kansas Rule of Professional Conduct (KRPC) 1.5(a) (2014 Kan. Ct. R. Annot. 515) for determining the reasonableness of a fee, excluding whether the fee is fixed or contingent. A lodestar computation, folding in the relevant KRPC 1.5 criteria, should generate a fee amount approximating the fair market value of the services a lawyer has provided to a client and, thus, the value of the benefit conferred for a *quantum meruit* award.

Appeal from Sedgwick District Court; J. PATRICK WALTERS, judge. Opinion filed March 20, 2015. Reversed and remanded with directions.

*Stephen L. Brave*, of Brave Law Firm, LLC, of Wichita, for appellant.

*Jennifer M. Hill*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for appellee.

Before SCHROEDER, P.J., BUSER and ATCHESON, JJ.

ATCHESON, J.: Plaintiff Mahnaz Consolver decided to change lawyers partway through this personal injury action she filed in Sedgwick County District Court. Bradley A. Pistotnik, the forsaken lawyer, filed a lien against any recovery for his fees and expenses. After Consolver's new lawyer settled the underlying tort claim, the district court enforced the lien by awarding Pistotnik a partial fee based on the contingency clause of his contract with Consolver. The district court erred. We remand for a redetermination of the fee due Pistotnik founded on a lodestar calculation consistent with the equitable principles of *quantum meruit* that govern in this circumstance.

For purposes of the attorney fee issue in front of us, we need not recount the circumstances of the motor vehicle collision between Consolver and Defendant Chris Hotze. And given our conclusion that the district court applied the wrong measuring stick in fashioning the fee due Pistotnik, we similarly need not detail the evidence presented at the lien hearing. We offer only the facts essential to placing our legal determination in context.

Consolver signed a contract with Pistotnik in April 2011 to represent her in getting compensation for injuries she received in the motor vehicle collision about a month earlier. The contract set Pistotnik's compensation as 33 1/3 percent of any recovery realized before the final pretrial conference and 40 percent of a recovery after that point. If Consolver recovered nothing, she owed Pistotnik nothing for his services or the case expenses. The contract did not contain a clause governing termination of the lawyer-client relationship before resolution of the underlying personal injury claim or how Pistotnik should be compensated in that event.

Pistotnik filed suit against Hotze and undertook discovery. About a year later, Pistotnik had active settlement negotiations with Hotze's lawyer. Hotze had offered $225,000, and his lawyer indicated $300,000 might be available if Consolver were scheduled for additional surgery for her injuries. Pistotnik understood Consolver to say she had been set for another surgery, but he could not confirm that understanding with her physician. Pistotnik, however, advised Hotze's lawyer Consolver would be having more surgery. Actually, Consolver neither had the surgery nor had she ever been scheduled for the procedure. But based on Pistotnik's representation, Hotze's lawyer extended a $300,000 settlement offer by e-mail on June 30, 2011, and confirmed the offer by letter 2 days later.

In the meantime, however, Consolver fired Pistotnik as her lawyer in a letter faxed to his office on June 28. Consolver hired Stephen Brave. Pistotnik promptly filed and served a statutory lien claiming $106,771 in fees and expenses. Brave did additional discovery in the case and settled the suit against Hotze in mid-2012 for $360,000.

Consolver, still represented by Brave, could not resolve Pistotnik's fee lien. The district court held an evidentiary hearing on July 9, 2013, at which Consolver, Pistotnik, and Hotze's lawyer testified. The district court entered an order with accompanying findings of fact and conclusions of law awarding Pistotnik $86,944 in fees and $10,156 in expenses. To determine a fee satisfying the lien, the district court began with the $300,000 offer made shortly after Pistotnik had been fired, deducted the expenses, and then applied the 33 1/3 percent contingency from the contract—yielding $96,518. Based on its finding that Pistotnik "did the majority of the work to prepare the case for settlement [or] trial," the district court concluded 90 percent of that amount or $86,944 represented an appropriate attorney fee. Finally, the district court added in the expenses to come up with an award of $97,101 to Pistotnik in satisfaction of his lien. The district

4

court characterized that approach as reflecting a *quantum meruit* determination of the compensation due Pistotnik.

Consolver has timely appealed the district court's fee award.

The determination of reasonable legal fees is typically entrusted to the district court's sound discretion. *Unruh v. Purina Mills*, 289 Kan. 1185, 1200, 221 P.3d 1130 (2009); *Johnson v. Westhoff Sand Co.*, 281 Kan. 930, 940, 135 P.3d 1127 (2006). A district court exceeds that discretion if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

Pistotnik's right to compensation for his legal services derives from his contractual relationship with Consolver. But the contract contained no terms dealing with payment should Consolver terminate Pistotnik before the litigation ended. In the absence of such provisions, the courts have generally held that a client must compensate the terminated lawyer based on equitable principles of *quantum meruit* or unjust enrichment. *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 904, 220 P.3d 333 (2009); *Madison v. Goodyear Tire & Rubber Co.*, 8 Kan. App. 2d 575, 579, 663 P.2d 663 (1983). Consolver and Pistotnik agree on this much of the law. Under a *quantum meruit* theory, a party conferring a benefit on another party is entitled to recover the value of the benefit conferred if the recipient knew of the benefit and retention of the benefit without compensation would be inequitable under the circumstances. *Haz-Mat Response, Inc. v. Certified Waste Services Ltd.*, 259 Kan. 166, Syl. ¶ 6, 910 P.2d 839 (1996); *City of Neodesha v. BP Corporation*, 50 Kan. App. 2d 731, 780, 334 P.3d 830 (2014) (necessary conditions for *quantum meruit* recovery include inequity of retaining benefit "without

5

payment of its value"); *Jones v. Culver*, 50 Kan. App. 2d 386, 390, 329 P.3d 511 (2014) (same).

Before discussing the application of *quantum meruit* in this case, we mention several matters that either are not disputed here or do not arise on these facts. First, nobody contends Pistotnik failed to perfect an attorney lien under K.S.A. 7-108, thereby encumbering the settlement funds to the extent of any compensation due him. The statute, however, does not address how to establish the amount of compensation. Next, Consolver had a right to terminate her contract with Pistotnik at any time with or without good cause. See Kansas Rule of Professional Conduct (KRPC) 1.16(a)(3), comment 4 (2014 Kan. Ct. R. Annot. 583) (client may discharge lawyer at any time); see also *Nostrame v. Santiago*, 213 N.J. 109, 121, 61 A.3d 893 (2013) (client free to discharge lawyer at any time); *Balestriere PLLC v. BanxCorp*, 96 A.D.3d 497, 497, 947 N.Y.S.2d 7 (2012) (well-settled public policy of New York permits a client to terminate attorney-client relationship freely at any time). Consolver did not discharge Pistotnik for demonstrable negligence or dereliction or some other good cause. We, therefore, do not presume to consider such a situation and expressly reserve any comment on what compensation, if any, might be equitable when a client dismisses a lawyer for good cause in a contingent-fee matter. Likewise, we do not speculate about two variations on the theme of this dispute:  (1) the efficacy of a contract termination clause calling for the lawyer to receive some share of an eventual recovery or another measure of compensation; and (2) the compensation that might be due a terminated lawyer if his or her replacement recovered little or nothing for the client.

Payment based on *quantum meruit* depends on the value or worth of the benefit to the recipient. And the value, therefore, should be viewed from the perspective of the recipient. Put another way, the recipient ought to owe an amount roughly equivalent to what he or she might reasonably expect to pay on the open market for the goods or services constituting the benefit. *Canyon Ambulatory Surgery v. SCF Arizona*, 225 Ariz.

6

414, 422, 239 P.3d 733 (2010); *Children's Hospital Central California v. Blue Cross of California*, 226 Cal. App. 4th 1260, 1274, 172 Cal. Rptr. 3d 861 (2014); *Matter of Estate of Carroll*, 436 N.E.2d 864, 866 (Ind. App. 1982); see *Scheiber v. Dolby Laboratories, Inc.*, 293 F.3d 1014, 1022-23 (7th Cir. 2002). We see no reason that measure shouldn't apply here.

In this case, the district court stepped outside the legal principles guiding *quantum meruit* to premise the fee award to Pistotnik on the contingency percentage in the contract with Consolver. A *quantum meruit* payment is fundamentally incompatible with a contingency fee in a contract for legal services. By design, a contingency fee builds in a premium over and above the fair market value of the services to account for the risk of no recovery—and, thus, no payment—not only in that case but in other cases the lawyer considers or takes. In other words, a contingency fee realized in a given case offsets uncompensated time the lawyer spends investigating or litigating matters that end up producing no revenue. See *Burlington v. Dague*, 505 U.S. 557, 565, 112 S. Ct. 2638, 120 L. Ed. 2d 449 (1992) ("An attorney operating on a contingency-fee basis pools the risks presented by his various cases: cases that turn out to be successful pay for the time he gambled on those that did not."); *Pennsylvania v. Del. Valley Citizens' Council*, 483 U.S. 711, 719-20, 107 S. Ct. 3078, 97 L. Ed. 2d 585 (1987). Pistotnik's lawyer acknowledged that economic reality. The premium, however, confers no added value or benefit to the client receiving a favorable settlement or judgment. That amount exceeds the fair market value of the lawyer's services measured by what those services would cost based on the benefit conferred. In turn, a contingent-fee model should not be used to establish a *quantum meruit* value of a lawyer's services to a particular client, since that would effectively require the client to subsidize the lawyer's other contingent-fee work.

The district court, therefore, erred in its basic approach to the issue, and the result is necessarily legally flawed.

The lodestar method of calculating attorney fees provides a sounder foundation for a *quantum meruit* award. A court makes a lodestar fee calculation by determining a reasonable hourly rate for the legal services and multiplying that by the reasonable number of hours required to handle the litigation. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) (outlining lodestar method); *Citizens Utility Ratepayer Bd. v. Kansas Corporation Comm'n*, 47 Kan. App. 2d 1112, 1126, 284 P.3d 348 (2012); *Kroshnyi v. U.S. Pack Courier Services, Inc.*, 771 F.3d 93, 108 (2d Cir. 2014). The hourly rate should reflect the prevailing rates in the community for lawyers of comparable experience and skill doing similar work, *i.e.*, civil litigation. *Blum v. Stenson,* 465 U.S. 886, 895, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984). Usually, the community is considered the general geographical area in which the underlying case has been litigated. *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1159 (8th Cir. 2014); *Navarro v. Monarch Recovery Management, Inc.*, No. 13-3594, 2014 WL 2805244, at *2 (E.D. Pa. 2014) (unpublished opinion). The reasonable time to perform the work commonly will be derived from contemporaneous records showing specific tasks and the time taken to perform them. The reviewing court may adjust the recorded time to eliminate duplicative work, excessive conferences, and other unwarranted inefficiencies. *Hensley*, 461 U.S. at 434 (no award for "hours that are excessive, redundant, or otherwise unnecessary"); *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).

In addition, the court should take into account the criteria outlined in KRPC 1.5(a) (2014 Kan. Ct. R. Annot. 515) for determining the reasonableness of a fee, excluding whether the fee is fixed or contingent. The KRPC 1.5 factors consider the time required, customary fees or rates for comparable legal services, constraints the litigation imposed on the lawyer in terms of deadlines or forgoing other work, the experience and skill of the lawyer, the nature of the ongoing professional relationship (if any) between the lawyer and the client, the value of what was at stake in the case, and the result obtained. They incorporate and expand upon the lodestar components of reasonable rate and reasonable time.[1]

[1]The criteria in KRPC 1.5 are used to assess the reasonableness of lawyer compensation under the rules of professional conduct. They apply to agreed-upon or contractual arrangements for payment. In most kinds of cases, a contingent fee is proper. See KRPC 1.5(f). Had Pistotnik completed Consolver's case, the fee arrangement in their contract would have been entirely appropriate under KRPC 1.5. Although a client may pay a premium under a contingent fee contract if the case is successfully resolved, he or she receives a benefit at the outset in not having to pay for the lawyer's services should there be no recovery. Virtually no litigation is risk free, so the arrangement is both reasonable and ethical. Here, however, the fee is not driven by the contract—Consolver terminated that agreement—but by the purely equitable considerations of *quantum meruit*. Those considerations depend solely on the value of the services and, therefore, exclude any premium that could be charged for the services.

A lodestar computation, folding in the relevant KRPC 1.5 criteria, should generate a fee amount approximating the fair market value of the services a lawyer has provided to a client and, thus, the value of the benefit conferred for a *quantum meruit* award. See *Perdue v. Kenny A.*, 559 U.S. 542, 551, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010) ("[T]he lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case."). The federal courts in New York, for example, have used that process, combining factors like those in KRPC 1.5 with a lodestar calculation, to establish fees due terminated lawyers on charging or attorney liens. *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 148-49 (2d Cir. 1998); *Antonmarchi v. Consolidated Edison Co. of New York*, 678 F. Supp. 2d 235, 242 (S.D.N.Y. 2010); *Balestriere PLLC  v. CMA Trading, Inc.*, No. 11 Civ. 9459, 2014 WL 7404068, at *3-5 (S.D.N.Y. 2014) (unpublished opinion).

On remand, the district court should determine the *quantum meruit* fee due Pistotnik using the lodestar method with any appropriate modifications consistent with the relevant criteria in KRPC 1.5. We recognize this may require reopening the evidentiary record and trust the district court to do so in a way promoting efficient resolution of the fee dispute. In that respect, we offer a couple of observations. First, the

9

reasonable hourly lodestar rate is a *market* rate for lawyers' services in the area. The hourly rate Pistotnik may quote for his own services is not a direct proxy for the market rate in the Wichita area for experienced civil litigators, although it may have some relevance if he has been regularly hired on that basis.

Second, at the initial hearing, Pistotnik testified that he did not keep contemporaneous time records of the work he did for Consolver. Nor did he attempt to prepare a detailed, after-the-fact accounting of his time. Rather, Pistotnik testified to a broad range of what he estimated to be the total number of hours he spent on the case—a very rough determination that came across as little better than a guess. That sort of generic reporting is unacceptable for lodestar purposes. Although the courts understandably have a distinct preference for contemporaneous time records, they can and do consider "reconstructed" records derived from a lawyer's careful review of the file and his or her studied recollection. See *Hensley*, 461 U.S. at 437-38 & nn.12, 13 (district court properly discounted claimed hours in lodestar calculation absent contemporaneous time records); *Sheldon v. Vermonty*, 237 F. Supp. 2d 1270, 1277-78 (D. Kan. 2002) (district court reduces compensable hours because time records were general and apparently not contemporaneous); *Ragin v. Harry Macklowe Real Estate Co.*, 870 F. Supp. 510, 520 (S.D.N.Y. 1994) (same); *Har-Tzion v. Waves Surf & Sport, Inc.*, No. 7:8-CV-137, 2011 WL 3421323, at *2 (E.D.N.C. 2011) ("Although contemporaneous time records are greatly preferred, adequate reconstructions may support an [attorney fee] award."). The district court should carefully review any such records presented on remand and resolve doubts about their sufficiency or the reasonableness of the reported time against Pistotnik, since he chose not to keep a contemporaneous accounting.

We have limited our discussion to the attorney fee component of the award in satisfaction of Pistotnik's statutory lien without separately addressing the expenses. The parties, too, have focused on the fees rather than the expenses. On remand, however, the district court may revisit both aspects of the overall lien award to Pistotnik.[2]

10

[2]Given our disposition of the case, we need not review the implications of some of the district court's factual findings that might be fairly questioned. For example, the district court relied on the $300,000 settlement offer as a basis for its fee calculation. The offer, however, was extended after Pistotnik had been terminated. The last offer to Consolver while Pistotnik represented her was $225,000. More troubling, however, the $300,000 offer was triggered by a misrepresentation—later corrected—that Consolver would undergo additional surgery. We fail to see how a settlement offer obtained through a mistaken representation should be considered at all in establishing a reasonable fee. The district court also never explained how it determined "the case was 90% complete" when Consolver terminated Pistotnik. The percentage has no anchor in the district court's findings of fact or conclusions of law.

Finally, we note and quickly reject Consolver's alternative argument that Pistotnik should receive no fee because the contract limited the contingency to a recovery he obtained for her—something that didn't happen here. The contract is not so limited. It simply requires the agreed-upon percentage be applied to "whatever amount is recovered . . . whether by settlement or trial." More fundamentally, however, Consolver can't terminate the contract, particularly absent good cause, and then rely on the terms of the contract to defeat an equitable claim for payment.

Reversed and remanded with directions.